```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

BRITTANY CLONCH,                    :
                                    :      NO. 1:10-CV-00348
    Plaintiff,                      :
                                    :
  v.                                :      **OPINION & ORDER**
                                    :
I-FLOW CORPORATION,                 :
                                    :
    Defendant.                      :

       This matter is before the Court on Defendant's Motion to Dismiss Third and Fourth Causes of Action (doc. 6), Plaintiff's opposition thereto (doc. 10) and Defendant's reply in support thereof (doc. 12). The Court heard arguments on the motion on November 10, 2010. For the following reasons, the Court DENIES Defendant's motion (doc. 6).

**I.   Background**

       In this diversity action, Plaintiff Clonch seeks damages for injuries allegedly caused by the use of a pump manufactured by Defendant I-Flow that was used to dispense pain medication on her joint after knee surgery in 2001 (doc. 1). She alleges that she developed chondrolysis as a result of the continuous infusion of pain medication on her knee joint via the I-Flow pump and will eventually need a total knee replacement (Id.). Her complaint includes claims for strict liability, negligence, breach of warranty and punitive damages (Id.).

       With respect to the breach of warranty claim, Defendant contends that it is precluded by Ohio's product liability act.

Specifically, Defendant reads the breach of warranty claim as being a claim for the implied breach of warranty of merchantability and fitness for particular use, and Ohio's Product Liability Act, O.R.C. 2307.71 et seq., preempts any UCC-based claims for breach of implied warranty of merchantability or intended use (doc. 6, citing Barrett v. Waco Int'l, 123 Ohio App. 3d, 1 702 N.E.2d 1216, 1997 Ohio App. LEXIS 3680 (8th App. Dist. 1997)("Ohio product liability statutes preempt warranty claims concerning products which seek damages for bodily injury"); Luthman v. Minster Supply Co., 2008 Ohio 165, 2008 Ohio App. LEXIS 139 (3rd App. Dist. 2008) ("Product liability claims are subject to the provisions in R.C. 2307.71 to R.C. 2307.79")).

In response, Plaintiff notes that Ohio's Product Liability Act does not preclude breach of express warranty claims but, instead, codified such claims at O.R.C. § 2307.77 (doc. 10, citing, inter alia, White v. DePuy, Inc., 718 N.E.2d 450, 485 (Ohio Ct. App. 1998)("The common law breach of express warranty was codified at R.C. 2307.77.")). Plaintiff contends that her complaint raises a claim for breach of express warranty under the Product Liability Act and not a claim for breach of implied warranty under the UCC as Defendant asserts. Furthermore, Plaintiff notes that her complaint is virtually identical to all of the other I-Flow cases that have come before the Court, each of which has survived in its entirety, even through summary judgement,

2

up until the cases settled (Id., citing Schott v. I-Flow Corp., 1:08-cv-00323; West v. I-Flow Corp., 1:09-cv-00098; Mitchener v. I-Flow Corp., 1:09-cv-00155; and Muzik v. I-Flow Corp., 1:08-cv-818). If, however, the Court finds that Plaintiff did not sufficiently plead a violation of an express warranty, Plaintiff argues that the proper remedy is to allow her to amend her complaint, not to dismiss the claim.

With respect to Plaintiff's claim for punitive damages, Defendant moves to dismiss on the basis that the claim fails to meet the Iqbal/Twombly threshold (doc. 6, citing Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Specifically, Defendant contends that Ohio law holds that to recover punitive damages a plaintiff must establish that her injury was the result of misconduct that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question, see O.R.C. 2307.80(c)(1), but that Plaintiff does not set forth any facts in her complaint that would support a showing of "flagrant disregard." Indeed, Defendant contends Plaintiff's complaint contains merely "conclusory and formulaic recitations" and that the only factual assertion Plaintiff makes in her complaint to support her claim for punitive damages is that Defendant had actual knowledge that the pump could cause injury, which, Defendant argues, is insufficient because the Court cannot plausibly infer "flagrant disregard" from that fact.

Plaintiff notes that the Court previously denied I-Flow's motion for summary judgement as to punitive damages in Schott v. I-Flow Corp., 1:08-cv-00323, finding that a reasonable fact-finder could conclude that an award of punitive damages was justified under substantially similar circumstances. Here, Plaintiff contends that she has alleged that I-Flow had knowledge of the risk of chondrolysis, that it chose to withhold that information from the orthopedic community, that it refused to conduct safety testing or limit its marketing tactics, and that Defendant is on notice of Plaintiff's ground for her claim to punitive damages "with enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]," which is what Twombly requires.

In reply, Defendant argues that Plaintiff is merely trying in briefing to recast her implied warranty claim as an express warranty claim and that the claim should be dismissed with prejudice because amendment would be futile since Plaintiff "admitted" that she does not know of the content of any alleged express warranty (doc. 12). Regarding the punitive damages issue, Defendant contends that Plaintiff needed to have cited the specific scientific studies that demonstrated a confirmed link between the pain pump and chondrolysis, when they were published and that I-Flow knew of them, in order to comply with the "specificity requirements" of Iqbal and Twombly (Id.). Defendant does not address the fact that the Court held, in denying summary judgment

4

to Defendant in earlier cases, that a reasonable fact-finder could conclude that an award of punitive damages is justified. However, at the hearing, Defendant argued that decisions by the Court in other cases are not instructive here because both the procedural posture and the facts are different from those earlier cases.

**II. The Applicable Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are

implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly*, Pleading Rules, and the Regulation of Court Access, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct. at 1949. Plausibility falls somewhere between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright,

Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969).  The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

**III.  Discussion**

As an initial matter, the Court notes that at the hearing, Defendant asserted that it was moving the Court to dismiss Plaintiff's negligence, breach of warranty and punitive damages claims.  However, in its motion to dismiss, Defendant moved the Court to dismiss only the breach of warranty and the punitive damages claims (doc. 6).  The Court does not issue advisory opinions, and it is fundamentally unfair to Plaintiff to ask the Court to decide an issue not presented in the filings before the Court.  Therefore, the Court will only address and decide the motion pending before it.

With respect to Count III, the breach of warranty claim, Defendant reads Plaintiff's complaint as setting forth a claim for breach of implied warranty, which, if so, would be precluded by the OPLA.  Plaintiff, on the other hand, asserts that the complaint

sets forth a claim for breach of an express warranty, which does fall within the ambit of the OPLA.  While this difference in interpretation could have been avoided had Plaintiff cited to the OPLA in her complaint, such omission is not reason to dismiss the claim.

The complaint reads in relevant part: "By intentionally promoting and knowingly selling the I-Flow pain pump for use in infusing bupivacaine with or without epinephrine into the knee following surgery, the Defendant warranted to the Plaintiff that it was merchantable, that it was proven safe and effective for use, that it was properly labeled, and that it contained proper instructions for its intended use" (doc. 1).  The complaint does not contain the exact language of a representation alleged to have been made by Defendant, but it does set forth facts from which the Court may plausibly infer that a representation was made and that the pump did not conform to that representation, which is all that is required by Ohio Rev. Code Section 2307.77 at the pleading stage.  See Ohio Rev. Code § 2307.77 ("A product is defective if it did not conform, when it left the control if its manufacturer, to a representation made by that manufacturer.").

Regarding Plaintiff's punitive damages claim, Count IV, the Court is unmoved by Defendant's arguments.  The complaint alleges that Defendant failed to warn against placing the catheter tip of the pump in the intra-articular space of the joint and

8

actively marketed it and instructed physicians for use that way despite having conducted no safety tests or clinical trials to determine the safety of the device (doc. 1).  In addition, the complaint alleges that Defendant did this with actual knowledge of studies and reports discussing the risk of chondrolysis from prolonged exposure of the cartilage to the pain medication dispensed by the pump and with actual knowledge that the Food and Drug Administration had decided not to clear the pump for such use (Id.).

Defendant asserts that Plaintiff needed to have set forth "with the specificity required by Iqbal and Twombly" the dates and names of the studies and reports.  And, at the hearing, Defendant stated that the cases require Plaintiff to set forth in the complaint both how and why Defendant knew its product was unsafe.

The Court finds Defendant's reading of Iqbal and Twombly to require such detailed specificity in the complaint to be in error.  In fact, the majority in Twombly stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.  Defendant's assertion that Plaintiff's punitive damages claim must fail because it does not include the names and dates of studies showing the dangers possible with the use of the pain pump is simply not supported by, let alone required by, the case law.  If the Court were to require Plaintiff to have all

9

evidence available to her before she files her complaint and to set forth that evidence in the complaint, the well-established rules and processes of discovery would be rendered utterly unnecessary. Evidentiary support such as that demanded by Defendant is simply not necessary at this stage in the proceedings, and the Court does not read Iqbal and Twombly to impose that requirement on plaintiffs.

The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal 129 S.Ct. at 1949, citing Twombly 550 U.S. at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly 550 U.S. at 555.  Here, Plaintiff's claim for punitive damages goes well beyond a "defendant-unlawfully-harmed-me accusation." The complaint alleges that Defendant failed to conduct safety tests or clinical trials, knew that the FDA had repeatedly failed to clear the pump for the very use Defendant then marketed and sold the pump for, and that Defendant was aware of the connection between chondrolysis and the use of the pump.  These are all clearly factual allegations, not, as Defendant claims, "conclusory and formulaic recitations."  And they are factual allegations from which the Court can very plausibly infer that Defendant exhibited a "flagrant disregard" for the safety of those using Defendant's pump.

In short, the complaint here may be inartfully drafted in that it did not reference the particular sections of the Ohio Product Liability Act under which Plaintiff seeks relief, but it provides sufficient notice to Defendant of the nature of Plaintiff's claims. See, e.g., Erickson v. Pardus, 551 U.S. 89, 93 (2007), citing Twombly 550 U.S. at 555 (plaintiff's statement must "give the defendant fair notice of what the...claim is and the grounds upon which it rests."). The federal rules still provide for notice pleading, not fact pleading, and Iqbal and Twombly did not rewrite the rules. What Iqbal and Twombly do require is that plaintiffs provide factual allegations from which a court may plausibly infer a cause of action. Where Conley v. Gibson, 355 U.S. 41 (1957) allowed for a wider no-set-of-facts possibility standard, Iqbal and Twombly slightly narrowed the field to complaints that set forth plausible, not merely possible, claims. This is a difference in degree not kind, and Plaintiff's complaint satisfies the standard.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss (doc. 6).

SO ORDERED.

Dated: November 16, 2010    s/S. Arthur Spiegel
                            S. Arthur Spiegel
                            United States Senior District Judge